# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

MARTY LEVINGSTON,

            Petitioner,    :    Case No. 1:12-cv-724

   - vs -                           District Judge Timothy S. Black
                                           Magistrate Judge Michael R. Merz

WARDEN, Warren Correctional Institution,

                                :

           Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 39) to the Magistrate Judge's Report and Recommendations recommending dismissal of the Petition with prejudice (the "Report," ECF No. 36). Judge Black has recommitted the case for reconsideration in light of the Objections (ECF No. 40).

**Procedural Default Arguments**

The Amended Petition contains fourteen Grounds for Relief (ECF No. 29, PageID 2091-96). The Report recommended that Grounds 1, 2, 3, 4, 6, 7, 8, 9, 10, 13, and 14 be dismissed as procedurally defaulted. The Objections do not deny the procedural defaults, but argue they can be overcome both by a showing of Levingston's actual innocence and by showing excusing cause and prejudice (ECF No. 39, PageID 2330-36).

1

**Actual Innocence**

The Objections quote the proper standard for proving actual innocence as a "gateway" to avoid the bar of procedural default: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Justice Stevens continued "[b]ecause such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.*

Petitioner claims that his is one of those rare cases and "[t]he evidence before this Court demonstrates his innocence beyond peradventure." (Objections, ECF No. 39, PageID 2331.) However, he presents no scientific or physical evidence, but rather the post-trial testimony of a purported eyewitness, Suriyah Dukes. In the Motion for New Trial in which Ms. Dukes' statement was presented to the Common Pleas Court, trial attorney Hal Arenstein represented that Ms. Dukes had known Levingston "since she was eight years old and was at her apartment in Hawaiian Terrace [the location of the murder] on the night of the shooting. Since the shooting she has been scared to come forward and avoided speaking to anyone about the incident." (ECF No. 10-1, PageID 166-167.) Arenstein admits that her identity was known to Levingston before trial, but attempts to excuse the failure to call her by claiming her location was unknown. *Id.* at PageID 167.

Dukes' Affidavit was signed January 22, 2009. In it she avers that she was in her apartment in Hawaiian Terrace at the time of the murder, December 28, 2007, and her cousin

Savana Sorrell[1] was with her, but in the "computer room." (ECF No. 10-1, PageID 171, ¶¶ 1-4.) Upon hearing "a commotion outside," both women ran to separate windows. *Id.* at ¶¶ 6-8. Sorrell immediately said "it was Marty," but Dukes said it wasn't. *Id.* at ¶¶ 9-10. She has known Levingston since she was eight and they grew up together in a neighborhood called Westwood. *Id.* at ¶¶ 11-12. After the shooting she left her apartment and went to a friend's house on the same street where Levingston called her and asked what was going on. *Id.* at PageID 172, ¶¶ 14-16. She avers the police never talked to her until January 5, 2009, and she told them she "was not at my house the night of the shooting because I was scared to tell them the truth." *Id.* at ¶ 21. She claims to be absolutely certain Levingston (whom she refers to by his first name) was not one of the shooters, but she "did not recognize the person." *Id.* at ¶¶ 22-23.

Trial of this case commenced January 5, 2009 (Trial Tr., ECF No. 10-3, PageID 576),[2] which is apparently the day Ms. Dukes lied to the police about what she had seen. The jury returned verdicts on January 20, 2009 (ECF No. 10-1, PageID 157-64). Somehow Ms. Dukes, who had been too frightened to come forward during the year between the murder and the trial suddenly overcame her fear, allowing her to come forward, talk to Levingston's lawyer, and sign the affidavit within two days after the verdict. It strains credulity to take those circumstances at face value as Levingston presents them. We are told nothing about the circumstances under which the affidavit was produced. Did Arenstein suddenly find Dukes, did she come forward on her own, or did Levingston call her after the verdict as he had done within minutes after the murder? Moreover, we are told nothing about the conversation she and Levingston had the night of the murder except that he purportedly asked her what was going on. Where was he at the

---

[1] Appears as both Sorrell and Sorrells in the record.
[2] The date of January 5, 2006, on the first page of the trial transcript is obviously incorrect, since the murder did not occur until December 2007.

time? How did he know something was "going on" at Hawaiian Terrace? Interestingly, however, Dukes' Affidavit undermines a critical piece of Levingston's actual innocence claim. He relies heavily on Sorrell's having recanted at trial her pre-trial identification of Levingston, but Dukes tells us Sorrell identified Levingston instantaneously when she witnessed the aftermath of the shooting.

Levingston focuses most of his actual innocence argument on the weakness of the trial evidence against him (Objections, ECF No. 39, PageID 2331-32). However, in considering an actual innocence claim, the Court only considers the weakness of the trial evidence as against the new evidence presented post-trial. Here, if the jury had heard Dukes' testimony as it is given in the Affidavit, it would have heard her claim that it was not Levingston, but that she had lied to the police about it just three weeks earlier. And her testimony as given in the Affidavit would have bolstered Sorrell's identification: instead of a "recanted" identification, they would have heard that Sorrell identified Levingston in her statement to Dukes at the time of the murder.

Levingston compares his new evidence of actual innocence with that accepted by the Sixth Circuit in *Cleveland v. Bradshaw*, 693 F.3d 626 (6th Cir. 2012). Cleveland also had a recanting eyewitness, but the recantation there was a complete repudiation of the witness's trial testimony plus an explanation of why he had lied and was made in the face of a threat of prosecution for perjury. In this case, Sorrell identified Levingston pre-trial, but at trial said she could not identify him, a much weaker "recantation" and one heard by the jury. Cleveland also had new forensic evidence that narrowed the time of death of the victim plus very good proof that he was in New York at the time of the murder, both an eyewitness to the alibi and proof of airline schedules. 693 F.3d at 636.

Justice Stevens acknowledged in *Schlup* that a district court involved in deciding an

actual innocence gateway claim will have to make credibility assessments and should accept the actual innocence claim only if "in the light of the new evidence, no reasonable juror would have found the defendant guilty." *Schlup*, 513 U.S. at 329-30.  Given that Dukes admitted lying to the police and that it actually bolsters Sorrell's identification, the Court concludes a reasonable juror could indeed have found Levingston guilty even if he or she had heard Dukes' testify as she does in her Affidavit.

**Cause for the Procedural Defaults**

In addition to his actual innocence "gateway" claim, Levingston asserts he can show cause and prejudice to excuse his procedural default of Grounds One and Two, relying on *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), and *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013).  In *Martinez* the Court held that where a criminal defendant is required to present ineffective assistance of trial counsel claims in a collateral attack on his conviction, ineffective assistance of counsel in the collateral attack will excuse the procedural default.  In *Trevino* the Court extended *Martinez* to the Texas post-conviction system where a defendant is practically, but not legally, forced to present ineffective assistance of trial counsel claims in a collateral attack.

The Report noted that the Sixth Circuit has not yet decided whether *Martinez* and *Trevino* apply to the Ohio system of adjudicating ineffective assistance of trial counsel claims (ECF No. 36, quoting *McGuire v. Warden*, 738 F. 3d 741, 751-52 (6th Cir. 2013)).

Assuming *Trevino* applies in Ohio, the Report concluded it would not save Levingston's First Ground for Relief (ineffective assistance of trial counsel in failing to present Suriyah Dukes

5

at trial) because that claim was available on direct appeal – denial of the motion for new trial and the conviction itself were appealed together – but was not raised (Report, ECF No. 36, PageID 2288). The Objections ignore that finding. Instead, Levingston claims ineffective assistance of appellate counsel because appellate counsel allegedly failed to "ensure his or [her] client's access to postconviction relief." (Objections, ECF No. 39, PageID 2335, citing *Gunner v. Welch*, 749 F.3d 511 (6th Cir. 2014)). In *Gunner*, the Sixth Circuit held an appellate attorney in Ohio has the duty to communicate the time limits for filing a petition for post-conviction relief to his or her client and that failure to do so will excuse untimeliness in filing that petition. Levingston claims his appellate attorney "failed to do so." (Objections, ECF No. 39, PageID 2335.) He gives no record reference for proof of that fact. The Court's examination of the Supplemental State Court Record (ECF No. 31) shows the Petition for Postconviction Relief was filed June 12, 2013. *Id.* at Exh. 40, PageID 2121. Levingston did not claim in that Petition that he was filing it late because his appellate attorney did not advise him of the date. The trial court denied the Petition on December 10, 2013. *Id.* at PageID 2133. Levingston, represented by the same counsel who represents him in this Court, did not file a Notice of Appeal until April 10, 2014. *Id.* at PageID 2134. On appeal Levingston did not argue that his Petition was untimely because his appellate attorney did not tell him about the time limits, but rather that his actual innocence excused his tardiness and that the Supreme Court had, in *Trevino*, recognized a new federal right under Ohio Revised Code § 2973.23(A)(1)(a)[3] "to bring an otherwise untimely petition for postconviction relief." (Appellant's Brief, ECF No. 31, Exh. 46, PageID 2161-62.) There is no allegation anywhere in this filing that appellate counsel failed to notify Levingston of the time to file for postconviction relief. And *Trevino*, assuming it applies in Ohio, did not recognize any such

---

[3] There is no such statute in the Ohio Revised Code. Although counsel repeats this incorrect reference twice at PageID 2162, the Court assumes the intended reference is to Ohio Revised Code § 2953.23(A)(1)(a).

federal right.

**Prejudice from the Procedural Defaults**

Levingston recognizes he must show prejudice as well as cause.  He attempts to do so by arguing the merits of each Ground for Relief (Objections, ECF No. 39, PageID 2336-45).

**Ground One:  Ineffective Assistance of Trial Counsel in Failing to Present Suriyah Dukes**

For the reasons given above, Suriyah Dukes' testimony, even the uncross-examined averments of her Affidavit, do not provide a slam-dunk exoneration of Levingston.  Moreover, he fails to explain how it was ineffective assistance of trial counsel to fail to present at trial a witness who, at the beginning of trial, lied to the police because she was frightened to testify.  Clearly Levingston himself knew of Dukes and called her about the murder within minutes after it happened.  Did Levingston tell Arenstein about Dukes and Arenstein failed to follow up?  How did Arenstein find Dukes within two days of the verdict?  These questions leave very substantial doubt that Ms. Dukes' failure to testify was the result of any unprofessional lack of diligence on Arenstein's part.

**Ground Two:  Ineffective Assistance by Failure to Call Levingston's Mother as an Alibi Witness**

The Report dealt with this Ground for Relief only on procedural default grounds.  As to

7

the merits of this claim, Levingston only asserts that he told Arenstein he was with his mother at the time of the murder. No record reference is given for this supposed communication (Objections, ECF No. 39, PageID 2338). In his untimely Petition for Post-Conviction Relief, Levingston included no evidentiary materials to support this claim, neither an affidavit from Levingston about his supposed communication with Arenstein nor any affidavit from the mother about what she would have testified to. Levingston has not shown prejudice from failure to put his mother on the witness stand.

**Ground Three: Ineffective Assistance of Appellate Counsel**

In his Third Ground for Relief, Levingston reiterates his claim that he received ineffective assistance of appellate counsel when his appellate attorney failed to pursue postconviction relief. As proof that failure to do so was deficient performance on appellate counsel's part, he relies on *Gunner v. Welch*, 749 F.3d 511 (6th Cir. 2014). But *Gunner* does not hold that an appellate attorney has the duty to "pursue" postconviction relief, but merely to notify his or her client when the transcript is filed and the statute of limitations on an Ohio Revised Code § 2953.21 petition begins to run. In any event, *Gunner* broke new ground in recognizing that duty but was not decided until April 17, 2014, long after Levingston's 180-day filing period had expired. Counsel's performance is measured by "prevailing professional norms" at the time of the alleged errors. *Strickland v. Washington,* 466 U.S. 668, 690 (1984); *Maryland v. Kulbicki*, 577 U.S. ___, 136 S. Ct. 2, *; 193 L. Ed. 2d 1 (2015); *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997).

**Ground Four:  Insufficient Evidence**

Ground Four was found procedurally defaulted by its abandonment on appeal to the Ohio Supreme Court (Report, ECF No. 36, PageID 2290-91).  The Objections do not dispute that this claim was not pursued on appeal to the Ohio Supreme Court.  Levingston instead argues that by analogy to *Gunner*, appellate counsel had a duty to pursue this claim to exhaustion and their failure to do so excuses the default (Objections, ECF No. 39, PageID 2339-40).  However, the Sixth Amendment guarantee of effective assistance of counsel only applies to proceedings in which one is constitutionally entitled to counsel.  The right to appointed counsel extends to the first appeal of right and no further.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974). Ineffective assistance of counsel can excuse procedural default only when it occurs in a proceeding where a defendant is constitutionally entitled to counsel under the Sixth Amendment.  *Wainwright v. Torna*, 455 U.S. 586 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective counsel); *Riggins v. Turner*, 1997 U.S. App. LEXIS 6115, *5 (6th Cir. 1997); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio 2002).

**Ground Five:  Actual Innocence**

Ground Five is a stand-alone claim to habeas corpus relief on the basis of actual innocence.  The Report recommended dismissing it as non-cognizable (ECF No. 36, citing *Herrera v. Collins,* 506 U.S. 390 (1993)).  The Objections claim that in *McQuiggin v. Perkins*, 569 U.S. ___, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013), "the Court reiterated the importance

9

of actual innocence in habeas proceedings." (ECF No. 39, PageID 2340.) *McQuiggin* held that actual innocence would excuse the failure to file within the AEDPA statute of limitations. It did not recognize a stand-alone actual innocence habeas claim.

**Grounds Six and Seven: Unduly Suggestive Photographic Evidence**

The Report held these two grounds for relief were procedurally defaulted by failure to include them in the appeal to the Ohio Supreme Court (ECF No. 36, PageID 2292). The Objections argue the merits and claim it was the duty of appellate counsel to pursue these claims on direct appeal. For the reasons given as to Ground Four, this is not excusing cause because there is no constitutional right to counsel on discretionary appeal to the Ohio Supreme Court.

**Grounds Eight and Nine: Denial of New Trial**

The Report found these claims procedurally defaulted because they were omitted on direct appeal to the Ohio Supreme Court. As with Grounds Four, Six, and Seven, Levingston's claim of ineffective assistance of appellate counsel (Objections, ECF No. 39, PageID 2342) is unavailing.

**Ground Ten: Prosecutorial Misconduct**

The Report found this claim procedurally defaulted because it was not raised on direct appeal at all (Report, ECF No. 36, PageID 2292-93). This was the defense the Warden had

raised and the Report noted that Levingston had made no response. *Id.* at 2293, citing Traverse, ECF No. 35, PageID 2266-68.

Levingston now objects that it was ineffective assistance of appellate counsel to fail to raise this claim on direct appeal (Objections, ECF No. 39, PageID 2343). Levingston of course had a constitutional right to effective assistance of counsel on direct appeal. Before a habeas petitioner may rely on ineffective assistance of appellate counsel to excuse a procedural default, he must first raise that claim by the appropriate method under state law. *Edwards v. Carpenter*, 529 U.S. 446 (2000). The only appropriate method for raising such a claim in Ohio is by an application for reopening under Ohio R. App. P. 26(B). Levingston filed such an application, but did not include prosecutorial misconduct as an omitted assignment of error (Return of Writ, ECF No. 10-1, PageID 335-38). Therefore Levingston has failed to sustain his claim that ineffective assistance of appellate counsel excuses his failure to raise this claim on direct appeal.

**Grounds Eleven and Twelve:  Recanted Identification by Savana Sorrells**

In Ground Eleven Levingston asserts he was denied a fair trial when the trial court instructed the jury to listen to a taped statement of Savana Sorrell in which she identified Levingston as a perpetrator of the murder. The Report found this Ground for Relief was preserved for merit review, but recommended dismissal because the First District Court of Appeals decision on this claim was not an objectively unreasonable application of Supreme Court precedent, particularly *Crawford v. Washington*, 541 U.S. 36 (2004), and *Henderson v. Kibbe*, 431 U.S. 145 (1977)(Report, ECF No. 36, PageID 2293-94). In Ground Twelve Levingston asserted in the Petition that admission of Sorrell's taped statement deprive him of due

11

process, but in the Traverse he switched to making a Confrontation Clause argument. The Report rejected this claim because Ms. Sorrell was available for cross-examination at trial. *Id.* at PageID 2296.

Levingston combines his Objections on these two Grounds and asserts both due process and the Confrontation Clause were offended because he did not have an opportunity to cross-examine Sorrell when she made the statement (Objections, ECF No. 39, PageID 2344). But he cites no United States Supreme Court precedent that supports this proposition.

**Grounds Thirteen and Fourteen: Failure to Give Appropriate "Snitch" Instruction**

In these two Grounds for Relief, Levingston asserts he was deprived of his constitutional rights when the trial judge failed to give an appropriately strong "snitch" instruction. The Report recommended that these claims be dismissed as procedurally defaulted because they were never fairly presented as constitutional claims to the Ohio courts and because they were abandoned on direct appeal to the Ohio Supreme Court (ECF No. 36, PageID 2297-99).

Levingston objects that "snitch" testimony is inherently unreliable, citing www.innocenceproject.org/causes-wrongful-convictions. The cited page purports to show that of the first 325 exonerations obtained by the use of DNA evidence, 72% involved eyewitness misidentification, 47% involved unvalidated or improper forensic evidence, 27% involved false confessions or admissions, and 15% (48 cases) involved "informants/snitches. As the Innocence Project advises, the "[t]otal is more than 100% because wrongful convictions can have more than one cause." *Id.* The webpage states the figures are based on "Innocence Project research," without giving any reference which a reader could check to determine whether the research was

12

reliable or not. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Moreover, this is not evidence that was before the Ohio courts when they decided these claims and therefore cannot be considered by this Court. *Cullen v. Pinholster,* 563 U.S. 170 (2011).

However, assuming the data is reliable and if it could be considered here, it would not prove the point for which it is cited. The fact that informant or "snitch" testimony was unreliable in 48 cases out of 325 examined does not even begin to establish as a matter of logic that it is inherently unreliable.

Levingston argues:

> If due process means anything, it must include informing triers of fact regarding limitations of evidence known to be untrustworthy. To permit a jury to hear from an incentivized snitch without a warning to be wary of such testimony deprives a defendant of both a fair trial and due process.
>
> The unencumbered nature of Mr. Taylor's testimony serves to entirely undermine confidence in the verdict rendered in the state court. The absence of a cautionary instruction regarding that testimony is grounds for habeas relief.

(Objections, ECF No. 39, PageID 2345.)

In deciding this claim on direct appeal, the First District noted that the requested instruction as to Taylor's testimony was inappropriate given the facts of this case because it was an instruction provided by Ohio Revised Code § 2923.03(D) for weighing the testimony of an accomplice. Plainly, Taylor was not ever alleged to have been an accomplice of Levingston. *State v. Levingston,* 2011-Ohio-1665, 2011 Ohio App. LEXIS 1479 (1st Dist. Apr. 8, 2011). The Due Process and Fair Trial Clauses of the Constitution plainly do not require giving a jury instruction about accomplice testimony when the witness in question has never been alleged to have been an accomplice.

In his Brief on appeal, Levingston raised as his Seventh Assignment of Error that "[t]he

trial court erred in not instructing the jury as to viewing the testimony of a witness/informer scrupulously and with grave suspicion." Counsel argued that one of the two requested instructions was "based on the accomplice instruction" and "the other was based upon instructions from the cases of *United States v. Solimine*,[4] 536 F.2d 703 (6th Cir. 1976) and *United States v. Gomez-Carta,* 419 F.2d 548 (2nd Cir. 1969)(State Court Record, ECF No. 10-1, PageID 259). Neither due process nor fair trial is mentioned anywhere in the argument. *Solimine* was on appeal from this Court where a defendant had been convicted of both theft and possession of the same stolen goods. The jury instructions were simply not at issue in the appeal. The jury instruction at issue in *Gomez-Carta* was failure of the trial judge to charge the jury that the grand jury testimony of government witnesses could be considered as affirmative evidence and not merely for impeachment. How either of these cases supports an argument, much less a constitutional argument, about mandatory "snitch" instructions is completely opaque to this Court. Thus these two claims are without merit even if they had been fairly presented as constitutional claims.

The Report found both these claims procedurally defaulted because they were abandoned on direct appeal to the Ohio Supreme Court (ECF No. 36, PageID 2299). Levingston's only response in the Objections is that appellate counsel's failure to raise these claims was ineffective assistance of appellate counsel. But as noted above with respect to Grounds for Relief Four, Six, Seven, Eight, and Nine, because there is no constitutional right to appointed counsel on a discretionary appeal, deficient performance by counsel in such an appeal cannot excuse a procedural default in pursuing that appeal.

**Certificate of Appealability**

---

[4] Misspelled "*Salimine*" in the Brief.

The Report recommends that Levingston be denied a certificate of appealability. He objects that he should be granted a certificate on each of his claims because "reasonable jurists could reach a contrary conclusion . . . ." (ECF No. 39, PageID 2345.) However, he offers neither citation to any such other hypothesized reasonable jurist nor any argument about why of the positions taken in the Report are debatable.

**Conclusion**

Based on the foregoing analysis, it is again respectfully recommended that the Petition be dismissed with prejudice. Because Petitioner has not demonstrated that reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

January 7, 2016.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).